155 So. 894

## ALLEN v. STATE.
### 5 Div. 930.

Court of Appeals of Alabama.
June 27, 1934.

Jas. W. Strother, of Dadeville, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

No brief has been filed in behalf of appellant, but under the statute this cannot militate against a full and thorough consideration by this court in a criminal case on appeal. In a case of this character, no assignment of error is necessary, and the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands. However, harmless error in the record cannot be made the basis for a reversal of the judgment of conviction, when the court is satisfied that no injury resulted therefrom to the defendant. Section 3258, Code 1923.

The record in this case is imperfect in that the demurrers interposed to the indictment, mention of which is made in the minute entry as having been overruled, are not set out in any part of the record; nor are the refused and given charges (which are referred to in the closing paragraph of the bill of exceptions) contained in the record or bill of exceptions. The demurrers, and the special written charges not being set out in any part of the transcript, this court has nothing before it for consideration in this connection.

This appellant was charged by indictment (jointly with another not on trial) with the offense of grand larceny, in that he feloniously took and carried away from a dwelling house, seven $20 bills, of the lawful currency of the United States of America, of the value of $140, the personal property of John Weaver, etc. The trial resulted in his conviction of the offense as charged, and the court fixed his punishment at imprisonment in the penitentiary for the term of not less than five years nor more than six years. From the judgment of conviction pronounced and entered, this appeal was taken.

The question of the sufficiency of the evidence to support the conviction is not presented as no ruling of the court in this connection was invoked or had on the trial of this case in the court below, as shown by the record. The affirmative charge is not shown to have been requested, nor does it appear that a motion for a new trial was made and brought to the attention of the court. It follows, therefore, that the points of decision, for our consideration on this appeal, are limited to the rulings of the court upon the admission of the evidence wherein proper exceptions are shown to have been reserved. There appears numerous exceptions of this nature. In our opinion it is not necessary to deal with or discuss each of these exceptions specifically, no good purpose could be thus subserved. Certainly this applies to nearly all of them as the questions involved are of the simplest nature and are therefore elementary.

 Weaver, the alleged injured party, had testified that, on the night in question when this appellant and others were at his home, he had in the inside pocket of his coat seven $20 bills, the money described in the indictment; that for some hours the party, or some of them, had engaged in the playing of a game of poker in which he, Weaver, joined; that after the game was over and all of the parties had left his home, he laid his coat containing the money aforesaid on his trunk near his bed, and that he retired. The solicitor propounded to him the following question: "Did you see this defendant James Allen?" The defendant objected, the court overruled same, and the defendant excepted. Certainly there was no error in this ruling. The question was preliminary in its nature. His reply was, "Yes sir," and, continuing, the witness testified: "I also saw Marvin Hamilton, (codefendant named in the indictment). They were at my home, with several others, (naming them). They stayed there until eleven o'clock. They all left together in a car. I got up and closed my door when

they left. It was fastened on the inside. I saw the defendant again about two o'clock. When the crowd left I had seven $20.00 bills. What happened, he come in and I got up and opened the door and laid back down on the bed and he come in and sit down betwixt me and the trunk and got my money. The witness said he didn't see him get the money. The court then excluded what the witness had said that he got his money." The witness further testified: "I say he came back in the house, and sat down on the bed between me and the trunk. My coat was on the trunk at the time when he sat down on the bed, as to whether the coat was in the same place he saw me put it, it was in the same place but he didn't see me put it there. Yes, sir, he saw where I had it when he came there at 2 o'clock. Yes, sir, there was a light in the room. The last time that he was there, there was nobody else there at all. Yes, sir, I were in bed. No sir, there was nobody else there any time during the night after this defendant left there. The next morning I got up and put on my coat and started my little fire and the first thing I done I put my hand in my pocket there and the money was gone, and I taken and went back and looked at the trunk and off the trunk and it wasn't there. It wasn't anybody else in the world to get it but James Allen. (This without objection). Why, it was a 16 foot room and the trunk was sitting sorter against the wall and the bed up the other way. As to how far it was from where James Allen was sitting to the trunk, oh, he could reach it. The last time he never stayed there twenty minutes the last time. As to whether I let him out the last time, he walked on out and I got up and shut the door. Nobody else came into my house between that time and the time I got up and found that my money was gone. I was living in and my house was in Chambers County at that time. After he stepped out of the house I heard a whistle. It wasn't a minute after the defendant left my house. After I heard that whistle I heard a car come up the road. The car didn't stop. It slowed up. I couldn't tell what happened after it slowed up. I didn't hear any noise only it rolled on. Yes, sir, I heard the movement of the car. It was going west."

 On cross-examination, counsel for defendant asked him the following question: "What time did your poker game begin?" The court sustained objection to this question and defendant excepted. The court was correct in this ruling. The question assumed as a fact that a poker game had begun and was therefore objectionable. Moreover, in this connection the court stated the proper

course to pursue upon an inquiry of this kind, which was followed and the defendant received the benefit of all the evidence relating to the poker game.

■ The next exceptions noted occurred as follows: Question by defendant's counsel, "Now Mr. Weaver, you went to see a fortune-teller to get him to tell you where your money was?" "A. Yes sir." "Q. Where did you go? A. Oh, I went over here in Tallapoosa." "Whom did you go to see? Who was the fortune-teller?" The solicitor objected to this question, the court sustained the objection, and defendant excepted. "Q. You went to see the fortune-teller because you didn't know who got it, didn't you?" Also, "When did you go to see the fortune-teller?" The court sustained objection to these questions and exceptions were reserved. The court stated, "I do not see what the question of visiting the fortune-teller has to do with this case," and added, "If you want to show that he said he didn't know who got his money that would be competent, just visiting the fortune-teller in general is not." There was no reversible error in these rulings. The indication by the court that he would permit any evidence tending to show that Weaver had said he did not know who got his money, gave the defendant the privilege of this inquiry, which, if successful, would have tended to contradict Weaver and impeach that portion of his testimony wherein he had stated the defendant had got his money. The defendant failed to avail himself of this line of inquiry. Moreover, it will be noted that the question propounded to Weaver as to his purpose in going to see the fortune-teller, related not to finding out from the fortune-teller "who got his money," but to get him to tell him where his money was. This manifestly for the purpose of recovering same if the all wise fortune-teller could answer his question.

Several remaining exceptions relate to the incidents and details of the alleged poker party, oyster stew, and whisky drinking, at the home of Weaver. These questions were as to matters not material. Weaver had testified that his money was intact and in his possession after the members or participants of the party had left, which was about 11 o'clock at night. Also that it was in his possession when this appellant returned there some three hours later. That appellant was the only person who came to his house after the party broke up, and that his money was missing early next morning.

■ State witness Glenn J. Barton testified that on Sunday morning after Weaver lost his money the night before, this appellant

and his codefendant, Marvin Hamilton, drove to his house in an automobile and arrived there between daylight and sunup. He stated, "They came there riding in an automobile. It was Mr. Hamilton's car; I don't know who was driving the car when they came up there. I saw this defendant (appellant), James Allen, there." The solicitor asked the witness, "Did you see him with any money?" The court overruled defendant's objection to the question. There was no error in this ruling, as the subsequent testimony clearly developed. The witness answered "Yes sir," and continued his testimony by stating: "As to how much money he had, he had two twenties, and two ones. Hamilton had five twenties." This line of inquiry was permissible and the court properly so held. Without dispute these men Allen and Hamilton had been at the home of Weaver the night before, and some one had taken seven $20 bills from Weaver's pocket according to Weaver's testimony, hence it was competent to show that a few hours, four or five, thereafter these two accused men were in possession of seven $20 bills, the identical number and denomination of the bills which had been taken from Weaver about 2 o'clock, the night before. There is no merit in the other exceptions reserved to the court's rulings on the testimony of witness Barton.

As to the remaining exceptions reserved to the court's ruling on the testimony, of which there are several, we have examined and carefully considered each of them. We find no reversible error in any of these rulings and see no necessity of prolonging this opinion by further discussion.

The record is regular in all respects and no reversible error appearing in any of the court's rulings to which exception was reserved, it follows that the judgment of conviction from which this appeal was taken must be and is affirmed.

Affirmed.